IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| AMY BAXTER, | § | |
| Plaintiff, | § § § | **SA09CA0657** |
| vs. | § § | CIVIL ACTION NO: _____ |
| WELLS FARGO & COMPANY, | § § | |
| Defendant. | § | **JURY DEMAND** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, by and through her undersigned counsel, respectfully files this Original Complaint and would show as follows:

### PRELIMINARY STATEMENT

1. Plaintiff Amy Baxter, who is deaf, brings this civil action against Defendant Wells Fargo & Company alleging that it violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181–12189, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794, and Chapter 121 of the Texas Human Resources Code by failing and refusing to communicate with her by telephone through the use of telecommunication relay services.

2. Ms. Baxter, a 28-year-old graduate student at the University of Texas at San Antonio, is a single mother of a two-year-old son for whom she is personally and financially responsible. As such, Ms. Baxter wants to open a bank account and a college fund to ensure her son's financial well-being. Ms. Baxter wants to open an account with Wells Fargo due to its proximity to her current home and school, and because of Defendant's nationwide presence.

3. Last month, Ms. Baxter called Wells Fargo's customer service line using the telecommunications relay service ("TRS"). Ms. Baxter called because she had some questions, for example, why one type of account might be better than another, or why choosing Wells Fargo would be better than opening an account with a competitor. If her questions were answered satisfactorily, she wanted to apply for an account with Wells Fargo.

4. Wells Fargo's customer representative, however, flatly refused to answer Ms. Baxter's questions through TRS and instead told her to call Wells Fargo's TDD (Telecommunications Device for the Deaf) line, go online to its website, or visit one of its branch locations. Ms. Baxter tried to explain—to no avail—that she did not own a TDD. As for Wells Fargo's website, Ms. Baxter would have been able to get her questions answered faster by phone using TRS than if she had to e-mail any questions not addressed by Defendant's website and then wait for Wells Fargo to answer. Further, she did not want to travel to a branch office, especially with her two-year-old son.

5. Although Ms. Baxter was calling Wells Fargo for the same reasons other potential customers and customers might call, Wells Fargo refused to serve Ms. Baxter over the phone because she is deaf and was using TRS. After stating that Wells Fargo's policy was to reject all TRS calls—allegedly for security reasons—Defendant's customer service representative hung up on Ms. Baxter. As a result, Ms. Baxter was denied the services that Wells Fargo routinely offers to the general public.

6. Ms. Baxter brings this lawsuit to compel Wells Fargo to cease its discriminatory practices, and to implement policies that will ensure effective communication and an equal opportunity to participate in and benefit from Wells Fargo's services. Ms. Baxter seeks

declaratory and injunctive relief, compensatory damages, and her reasonable attorney's fees, expenses, and costs.

## PARTIES

7. Plaintiff Amy Baxter resides at 705 Windrock Drive, San Antonio, Bexar County, Texas 78239.

8. Defendant Wells Fargo & Company is a financial institution that owns, operates, and/or leases a place of public accommodation and provides financial services to institutions and individuals. Defendant is authorized to and conducts business in the State of Texas and in this judicial District and can be served through its registered agent, Corporation Service Company (CSC) – Lawyers Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California 95833.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a). This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(c), as Defendant conducts business in this District and has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced.

## FACTUAL ALLEGATIONS

11. Plaintiff Amy Baxter is deaf. Due to her deafness, Ms. Baxter is substantially limited in the major life activities of hearing, speaking, and communicating.

12. Ms. Baxter cannot use a conventional telephone to call other people or businesses. She relies on the use of the telecommunications relay service to access the telephone network and to communicate for any purpose with people who use telephones.

13. Title IV of the ADA, codified at 47 U.S.C. § 225, established nationwide telecommunications relay services ("TRS"), which are "telephone transmission services that provide the ability for an individual who has a hearing impairment or speech impairment to engage in communication by wire or radio with a hearing individual in a manner that is functionally equivalent to the ability of an individual who does not have a hearing impairment or speech impairment to communicate using voice communication services by wire or radio. Such term includes services that enable two-way communication between an individual who uses a TDD [Telecommunications Device for the Deaf, or TeleTypewriter ("TTY")] or other nonvoice terminal device and an individual who does not use such a device." 47 U.S.C. § 225(a)(3).

14. There are many forms of TRS available for use, depending on the individual's communication needs and preference. *See* Federal Communications Commission ("FCC") TRS factsheet at http://www.fcc.gov/cgb/consumerfacts/trs.html (attached as Exhibit A).

15. One form of TRS is called Video Relay Service ("VRS"). "The VRS caller, using a television or a computer with a video camera device and a broadband (high speed) Internet connection, contacts a VRS CA [communications assistant], who is a qualified sign language interpreter. They communicate with each other in sign language through a video link. The VRS CA then places a telephone call to the party the VRS user wishes to call. The VRS CA relays the conversation back and forth between the parties -- in sign language with the VRS user, and by voice with the called party. . . . A voice telephone user can also initiate a VRS call . . . " *Id.*

16. Another widely used form of TRS is called the Internet Protocol ("IP") Relay service. "IP Relay is a text-based form of TRS that uses the Internet, rather than traditional telephone lines, for the leg of the call between the person with a hearing or speech disability and the CA." *Id.*

17. Individuals with or without a hearing or speech impairment may initiate or receive a call through any form of TRS.

18. The FCC has promulgated regulations to implement Title IV of the ADA, 47 U.S.C. § 225, which are codified at 47 C.F.R. §§ 64.601–64.606.

19. FCC regulations require that communications assistants "be sufficiently trained to effectively meet the specialized communications needs of individuals with hearing and speech disabilities." 47 C.F.R. § 64.604(a)(1)(i).

20. FCC regulations require TRS providers to ensure that "VRS CAs are qualified interpreters . . . able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary." 47 C.F.R. § 64.604(a)(1)(iv).

21. FCC regulations expressly prohibit CAs "from disclosing the content of any relayed conversation regardless of content, and . . . from keeping records of the content of any conversation beyond the duration of a call . . . ." 47 C.F.R. § 64.604(a)(2)(i).

22. FCC regulations strictly prohibit CAs from "intentionally altering a relayed conversation" and require TRS providers to take appropriate measures to ensure that confidentiality of TRS users is maintained. 47 C.F.R. § 64.604(a)(2)(ii).

23. Texas law also mandates the confidentiality of calls made through Relay Texas, which provides certain forms of TRS, generally for calls originating in Texas. A "relay agent

means a person employed to relay conversations for a person who is hearing impaired or speech impaired over a dual-party telephone system." TEX. HUM. RES. CODE § 82.001(2).

24. Under the Texas Human Resources Code, a "relay agent who is employed to . . . relay a conversation between a person who can hear and a person who is hearing impaired or speech impaired is a conduit for the conversation and may not disclose or be compelled to disclose, through reporting or testimony or by subpoena, the contents of the conversation." TEX. HUM. RES. CODE § 82.002.

25. Under the Texas Human Resources Code, a "relay agent who is employed to . . . relay a conversation between a person who can hear and a person who is hearing impaired or speech impaired commits an offense if the . . . relay agent discloses the contents of the conversation, unless the . . . relay agent obtains the consent of each party to the conversation." Tex. Hum. Res. Code § 82.003(a).

26. Violation of Section 82.003 of the Texas Human Resources Code is a Class C misdemeanor. TEX. HUM. RES. CODE § 82.003(b).

27. Defendant Wells Fargo has about thirteen branch locations in San Antonio, Texas.

28. Ms. Baxter wants to ask Defendant about the different accounts and options available and wants to open an account for herself and her son with Wells Fargo.

29. On July 17, 2009, Ms. Baxter called Defendant Well Fargo's general customer service line using TRS.

30. Defendant's customer service representative told Ms. Baxter that they would not handle Ms. Baxter's call, allegedly for security reasons, because she was using TRS, and that Defendant Wells Fargo would serve her only if she went online, called its TDD line, or came into one of its branch locations.

31. Defendant Wells Fargo routinely answers questions, provides information, and accepts applications for accounts over the phone for non-TRS callers.

32. Defendant Wells Fargo has a written policy of not accepting TRS calls for any reason, even though TRS is the method relied upon to make telephone calls by individuals who are deaf, hard of hearing, or have speech impairments.

33. Defendant Wells Fargo has and will continue to discriminate against Ms. Baxter on the basis of her disability by refusing to accept her TRS calls. Defendant has several branch offices and ATMs that are close to Ms. Baxter's residence and where she attends school. Ms. Baxter still wishes to open a bank account for herself and her young son with Wells Fargo, if and when Defendant answers her questions and begins accepting her TRS calls in the same manner they accept telephone calls from other individuals. Once Ms. Baxter opens accounts with Wells Fargo, she wants to be able to manage her accounts by phone, just like all other Wells Fargo customers who are not deaf, hard of hearing, or who do not have speech impairments.

34. On information and belief, and in contrast to Defendant Wells Fargo, it is the policy of other banking institutions to accept TRS calls from their customers who are deaf, hard of hearing, or have speech impairments.

35. On information and belief, national banks that accept TRS calls include, but are not limited to, Citibank, Capital One, and Bank of America.

36. On information and belief, Defendant Wells Fargo is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794.

## FIRST CAUSE OF ACTION:
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT

37. Plaintiff Amy Baxter restates and incorporates by reference each of the allegations in paragraphs 1 through 36, above.

38. Ms. Baxter is substantially limited in the major life activities of hearing, speaking, and communicating. 42 U.S.C. § 12102(2)(A). Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(1)(A).

39. Defendant Wells Fargo owns, leases, and/or operates a place of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

40. Defendant has discriminated and continues to discriminate against Ms. Baxter on the basis of her disability, in violation of Title III of the ADA, 42 U.S.C. § 12182, by denying Ms. Baxter equal participation in the services offered to others, and by refusing to reasonably modify their policies, practices, or procedures to accept TRS calls.

## SECOND CAUSE OF ACTION:
## SECTION 504 OF THE REHABILITATION ACT

41. Plaintiff Amy Baxter restates and incorporates by reference each of the allegations in paragraphs 1 through 40, above.

42. Ms. Baxter is substantially limited in the major life activities of hearing, speaking, and communicating. Accordingly, she is considered an individual with a disability as defined under Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. § 705(20)(B).

43. Ms. Baxter is a "qualified individual with a disability" under Section 504 of the Rehabilitation Act because she meets the essential eligibility requirements for the receipt of Defendant's programs and services.

44. During all relevant times, Defendant Wells Fargo is a recipient of federal financial assistance within the meaning of 29 U.S.C. § 794(b)(A)(1) by virtue of its participation in federal programs including, but not limited to, the Troubled Assets Relief Program (TARP), and its acceptance and provision of VA Home Loans, Federal Housing Administration Loans, Small Business Administration Loans, and the Federal Family Education Program Loans.

45. Defendant Wells Fargo has discriminated and continues to discriminate against Ms. Baxter on the basis of her disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), by denying her equal access to the services offered to others because Defendant refuses to reasonably modify its policies, practices, or procedures to accept TRS calls.

### THIRD CAUSE OF ACTION:
### CHAPTER 121 OF THE TEXAS HUMAN RESOURCES CODE

46. Plaintiff Amy Baxter restates and incorporates by reference each of the allegations in paragraphs 1 through 45, above.

47. Ms. Baxter is substantially limited in the major life activities of hearing, speaking, and communicating. Accordingly, she is considered an individual with a disability as defined by Section 121.002(4) of the Texas Human Resources Code.

48. Defendant Wells Fargo is a private for-profit financial institution that owns, operates, or leases public facilities as defined by Section 121.002(5) of the Code.

49. "The disability discrimination prohibited by [Section 121 of the Texas Human Resources Code] includes . . . a failure to make reasonable accommodations in policies, practices, and procedures." TEX. HUM. RES. CODE § 121.003(d)(2).

50. Pursuant to Section 121.004(b) of the Texas Human Resources Code, "a person" or "corporation" "who violates the provisions of Section 121.003 is deemed to have deprived a person with a disability of . . . her civil liberties." As such, the person with a disability who has been deprived of her civil liberties may "maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $100 to the person with the disability." *Id.*

51. Defendant Wells Fargo has deprived and continues to deprive Ms. Baxter of her civil liberties in violation of Chapter 121 of the Texas Human Resources Code by its failure to

make reasonable modifications in its policies, practices, and procedures to allow TRS calls necessary for Ms. Baxter's full use and enjoyment of the services Wells Fargo provides to the general public, its customers, and potential customers.

## ATTORNEY'S FEES

52. Plaintiff is entitled to and seeks an award of her reasonable attorney's fees, expenses, and costs pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205.

## JURY DEMAND

53. Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court provide the following relief:

A. Issue a declaratory judgment that Defendant's policies, procedures, and practices subjected Plaintiff to discrimination in violation of Title III of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

B. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that denies individuals, such as Plaintiff, who are deaf or hard of hearing, or have speech impairments, equal access to and an equal opportunity to participate in and benefit from Defendant's services or programs;

C. Enjoin Defendant from implementing or enforcing any policy, procedure, or practice that limits or restricts individuals, such as Plaintiff, who are deaf or hard of hearing, or have speech impairments, from using TRS to communicate with Defendant;

D. Order Defendant to develop, adopt, and comply with written policies, procedures, and practices requiring Defendant to accept TRS calls from Plaintiff and other similarly situated individuals who are deaf, hard of hearing, or have speech impairments;

E. Order Defendant to train all representatives and employees about Plaintiff's rights and the rights of individuals who are deaf, hard of hearing, or have speech impairments, as well as provide training on Defendant's policies and procedures on accepting TRS calls;

F. Order Defendant to provide information to the general public, its customers, and potential customers, via its website and promotional materials, on its acceptance of TRS calls;

G. Award Plaintiff damages under Section 504 of the Rehabilitation Act, and damages of at least $100.00 per occurrence under Chapter 121 of the Texas Human Resources Code;

H. Award Plaintiff her reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205; and

I. Award any and all other relief that this Court finds necessary and appropriate.

Dated: August 13, 2009

Respectfully submitted,

_____
PETER HOFER
Texas Bar No: 09777275
P. FAYE KUO
Texas Bar No: 24057952
ADVOCACY, INCORPORATED
7800 Shoal Creek Blvd, Suite 171-E
Austin, Texas 78757
512.454.4816 Phone
512.454.3999 Fax
phofer@advocacyinc.org
fkuo@advocacyinc.org

MICHAEL S. STEIN
State Bar No. 668992
MARC P. CHARMATZ
State Bar No. 09358
NATIONAL ASSOCIATION OF THE DEAF
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
301.587.7732 Phone
301.587.1791 Fax
michael.stein@nad.org
marc.charmatz@nad.org

ATTORNEYS FOR PLAINTIFF